**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-12-0000847**
**30-SEP-2013**
**08:52 AM**

NO. CAAP-12-0000847

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

ASSOCIATION OF APARTMENT OWNERS OF NIHILANI
AT PRINCEVILLE RESORT,
Plaintiff-Appellee,
v.
NIHILANI GROUP, LLC; BROOKFIELD HOMES HAWAII, INC.;
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; DOE GOVERNMENTAL ENTITIES 1-10,
Defendants-Appellants

---

NIHILANI GROUP, LLC and BROOKFIELD HOMES HAWAII, INC.,
Third-Party Plaintiffs,
v.
JD PAINTING & DECORATING, INC.;
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; DOE GOVERNMENTAL ENTITIES 1-10,
Third-Party Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 09-1-0274)

MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Fujise, JJ.)

Defendants-Appellants Nihilani Group, LLC and
Brookfield Homes Hawaii, Inc. (collectively, Brookfield) appeal
from the September 12, 2012 "Order Granting Plaintiff Association
of Apartment Owners of Nihilani at Princeville Resort's Motion to
Enforce Settlement Filed May 10, 2012" entered in the Circuit

Court of the Fifth Circuit[1] (circuit court).  Plaintiff-Appellee Association of Apartment Owners of Nihilani at Princeville Resort (AOAO) and Brookfield's July 2011 settlement agreement resolved breach of construction contract and damages claims relating to a condominium construction project in Princeville, Kauaʻi (Project).

On appeal, Brookfield contends the circuit court erred in (1) "concluding that there was no genuine issue of material fact that the parties had entered into a valid compromise agreement because the Brookfield Appellants were mistaken as to a basic assumption at the time of [executing the settlement agreement]" and (2) awarding attorneys' fees to AOAO.[2]

## I.  BACKGROUND

Nihilani Group, LLC and Brookfield Homes Hawaii, Inc. are, respectively, the developer and general contractor for the Project.  On February 16, 2010, AOAO filed their first amended complaint in circuit court, alleging that Brookfield breached its construction contract by failing to (1) provide a proper surface for an interior turnaround area and visitor parking stalls; (2) construct a trash enclosure; and (3) remediate a building mold problem that resulted from improper ground surfacing.  Existing surfacing for the turnaround area and visitor parking stalls consisted of "grass crete" (a plastic piece that holds the grass/base) that AOAO found unsatisfactory.

In July 2011, AOAO and Brookfield entered a General Release and Settlement Agreement (Agreement) that resolved all claims between the parties.  Paragraph 11 of the Agreement provided:

---

[1]  The Honorable Kathleen N.A. Watanabe presided.

[2]  Brookfield's opening brief fails to comply with Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 28(b)(1) by omitting a subject matter index and table of authorities.  Counsel for Brookfield is warned future noncompliance with HRAP Rule 28(b) may result in sanctions.

11.    Merger; Interpretation

This Agreement contains the entire Agreement between the Parties hereto and supersedes all other prior or concurrent oral or written letters, agreements, or understandings between the Parties regarding the Incident. The terms of this Agreement are contractual and not a mere recital.  The interpretation of this Agreement shall be decided and construed in accordance with Hawaii law.  This Agreement is the product of arms-length negotiations between the Parties and therefore shall be deemed to have been drafted jointly by the Parties.

The Agreement required Brookfield to replace existing grass crete and install pervious concrete in the Project's visitor parking and turnaround areas, pending approval from the Princeville Community Association's Community Design Committee (CDC) and the County of Kaua'i (County).  If those permits were not approved, Brookfield would "offer the AOAO the 'cash equivalent'" of pervious concrete installation; and if AOAO rejected the "cash equivalent", pay AOAO $20,000 and install a grass-crete alternative to the form already installed in the Project.

On July 6, 2011, CDC approved Project plans to install pervious concrete as stated in the Agreement. On August 26, 2011, Brookfield requested approval from the County "to change the [Project's] grass pave material to a pervious concrete material supplied by the local concrete vendor" for work scheduled to begin on October 1, 2011.  On or about October 21, 2011, the County approved Brookfield's request.

On November 15, 2011, AOAO noted that the original date for construction was October 1, 2011 and requested the name of the pervious concrete contractor and the new date for installation.  On December 2, 2011, Brookfield informed AOAO that its local contractor was Hawaiian Masonry.  On January 5, 2012, Brookfield wrote to AOAO counsel:

After spending all that time on getting approval for the grass crete, the contractor has pulled out on doing the work so we are left with no one to do the work.  Brookfield is therefore offering the "cash equivalent" of $60,000 to

3

complete its obligations for that part of the General
Release [Agreement].

On March 2, 2012, Brookfield informed AOAO that it "believed that the cost of the [pervious concrete] work would be in the range of $60,000 - $80,000[,]" but had since only found contractors willing to complete the work for $200,000 - $240,000. In a letter dated March 12, 2012, AOAO referred Brookfield to Agreement provisions requiring them to install pervious concrete at Project turnaround and visitor parking areas in the event that CDC and the County approved. On May 10, 2012, AOAO filed a motion to enforce the Agreement.

At the May 29, 2012 hearing on AOAO's motion, Brookfield argued that the Agreement should not be enforced because the parties entered into the Agreement under the mistaken belief that the cost of the undertaking was $60,000 - $80,000 and not $200,000 - $240,000. Brookfield acknowledged that its mistaken assumption that the cost would "be in the neighborhood of $60,000" was exclusively supported by (1) a March 15, 2010 price quote for grass crete parking stalls and (2) a declaration by Brookfield President, Jeffrey Proster that he believed pervious concrete installation would cost between $60,000 - $80,000. The circuit court found (1) no dispute about the validity of the contract or the provisions of the contract, (2) that the parties were not mutually mistaken, and (3) Brookfield raised no genuine issue of material fact precluding enforcement of the Agreement. The circuit court also stated it would grant a reasonable request for AOAO's attorneys' fees.

On September 12, 2012, the circuit court filed the "Order Granting Plaintiff Association of Apartment Owners of Nihilani at Princeville Resort's Motion to Enforce Settlement Filed May 10, 2012" and summarily awarded AOAO attorneys' fees and costs in the amount of $5,325,18. On October 12, 2012, Brookfield filed a timely notice of appeal.

4

## II.   STANDARDS OF REVIEW

A.      Enforcement of a Settlement Agreement

Appellate review of an order granting a motion to enforce a settlement agreement is the same as it would be for a motion for summary judgment. Miller v. Manuel, 9 Haw. App. 56, 64, 828 P.2d 286, 292 (1991). A grant or denial of a motion for summary judgment is "de novo under the same standard applied by the circuit court." Dairy Road Partners v. Island Ins. Co., 92 Hawaiʻi 398, 411, 992 P.2d 93, 106 (2000). Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Hawaiʻi Rules of Civil Procedure Rule 56(c). Accordingly, "a motion to enforce a settlement agreement may not be decided summarily if there is any question of fact as to whether a mutual, valid, and enforceable settlement agreement exists between the parties." Moran v. Guerreiro, 97 Hawaiʻi 354, 371, 37 P.3d 603, 620 (App. 2001).

B.      Reasonableness of Attorneys' Fees

Appellate courts review the reasonableness of a trial court's grant of attorneys' fees and costs for abuse of discretion. Kukui Nuts of Hawaii, Inc. v. R. Baird & Co., 6 Haw. App. 431, 436, 726 P.2d 268, 271 (1986).

## III.   DISCUSSION

Brookfield argues that their unilateral mistake as to a basic assumption of the Agreement - that the cost of its obligations under the Agreement would approximate $60,000 and not upwards of $200,000 - constitutes a genuine issue of material fact that precluded the circuit court's grant of AOAO's motion to enforce the Agreement. Specifically, Brookfield argues the circuit court erred by (1) failing to recognize a unilateral mistake as a legal basis for raising a genuine issue of material fact in regard to the Agreement, (2) failing to find that Prostor's declaration of unilateral mistake sufficed to raise a

5

genuine issue of material fact that contests the validity of the Agreement, and (3) awarding attorneys fees to AOAO.

One party's mistake about "a basic assumption supporting the contract at the time of its making" renders a contract voidable if:

> the mistake is material and has an adverse effect to the agreed exchange of performances - so long as (1) the mistaken party has not borne the risk of the mistake and (2) enforcement of the contract would not [sic] [3] be unconscionable, or the other party had reason to know of the mistake or caused the mistake. Restatement (Second) of Contracts § 153, at 394, and § 154, at 402-03 (1979). Furthermore, where the party seeking relief was not mistaken but consciously ignored the fact that he or she had limited knowledge of the facts, he or she effectively bears the risk of that mistake. Restatement (Second) of Contracts § 154 cmt. c.

State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Hawai'i 315, 325, 978 P.2d 753, 763 (1999) (citations omitted and emphasis added).

Under State Farm, Brookfield's alleged unilateral mistake would be a "material" issue if (1) Brookfield did not bear risk of mistake; and (2) enforcement of the Agreement would be unconscionable. 90 Hawai'i at 325; 978 P.2d at 763.

The circuit court relied on the absence of "mutual mistake" in its decision to grant AOAO's motion to enforce the settlement:

> And what we have here comes down to the - whether or not the parties had a mutual mistake or this is a mistake on the part of [Brookfield] regarding their calculation as to the extent of their obligation which is the pervious concrete. . . . It's unfortunate, but it does not appear to be any mistake on [AOAO's] part; and as such, the Court is granting [AOAO's] motion. This is to enforce the settlement.

Brookfield correctly argues that a unilateral mistake may be a basis for raising a genuine issue of material fact about

---

3    As the citation to the Restatement (Second) of Contracts § 153 makes clear, the text should read "(2) enforcement of the contract would be unconscionable[.]"

whether mutual assent was reached between the parties in forming their Agreement. Upon a showing of mistake, a court may consider extrinsic evidence in its inquiry into parties' rights under a fully-integrated agreement. See State Farm, 90 Hawai'i at 324, 978 P.2d at 762. Brookfield argues that Prostor's declaration shows such a material mistake.

Prostor's declaration states "Brookfield had thoroughly researched the options available to it prior to executing the Settlement Agreement in July 2011 and determined that installation of pervious concrete within the Project's visitor parking and turnaround areas would cost roughly $60,000.00 to $80,000.00" The record shows that grass crete, not pervious concrete, costs upwards of $60,000 and that Brookfield knew prior to entering the Agreement that pervious concrete would cost substantially more than grass crete. On March 15, 2010, Brookfield learned that grass crete installation in the visitor parking stalls (excluding the turnaround areas) would cost approximately $57,000 through its grass crete subcontractor, No Ka Oi Landscape Services. As of December 16, 2010, Brookfield acknowledged that the difference in cost for pervious concrete as compared with grass paving would be "substantial" and negotiated with AOAO to reduce the area to be concrete paved and to obtain $6,000 towards this effort from AOAO.

Brookfield's mistake was not a material issue because Brookfield bore the risk of its mistake. A party bears the risk of mistake if (1) the risk is so allocated in the parties' Agreement, (2) the party "has only limited knowledge with respect to the facts to which the mistake relates but treats [the party's] limited knowledge as sufficient," or (3) the court allocates the risk to the party on grounds that are reasonable under the circumstances. AIG Hawaii Ins. Co., v. Bateman, 82 Hawai'i 453, 458, 923 P.2d 395, 400 (1996) (citing Restatement

7

(Second) of Contracts § 154 at 402-03) *amended on reconsideration in part* by 83 Hawai'i 203, 925 P.2d 373 (1996) (emphasis added).

Brookfield argues that it does not bear the risk of the mistake because the Agreement did not so allocate the risk[4] and Prostor's declaration that he had researched price quotes for pervious concrete demonstrates that Brookfield did not enter the Agreement with an awareness of its limited knowledge.

The Agreement did not expressly oblige Brookfield to pay a particular price for pervious concrete installation nor allocate to it the risk of pervious concrete price increases. On December 16, 2010, AOAO President, Ken Buono, wrote to Jeff Proster summarizing their discussions. The email stated that "Brookfield is only committed to do pervious concrete in the turnaround and visitor parking area . . . . The rest will be grass paved. The cost difference is substantial if the [AOAO] wanted it all in pervious concrete." Brookfield subsequently learned that the actual cost difference would be $140,000 - $160,000. Brookfield was aware that pervious concrete would be substantially more than grass crete prior to entering the July 2011 Agreement, but was determined to bear the risk of limited knowledge by failing to learn about the actual cost by either procuring subcontractor bids prior to entering the Agreement or investigating the alleged $60,000 - $80,000 low bid of its initial contractor. The $140,000 - $160,000 discrepancy between the initial subcontractor's price quote for pervious concrete installation and subsequent subcontractors' much higher quotes suggests that Brookfield should have investigated the initial low bid, and by failing to do so, bore the risk of entering the Agreement with limited knowledge. See Restatement (Second) of Contracts § 154 (1981); (citing <u>Hankins Const. Co. v. U.S.</u>, 838

---

[4] The circuit court did not explicitly allocate risk to Brookfield, but did find that the mistake was exclusively on the part of the Brookfield.

F.2d 1194, 1196 (1988) (a contractor who was aware that a bid was extremely low, but failed to investigate the bid, bore the risk of entering the contract on such limited knowledge)).

Because it bore the risk of entering the Agreement and "consciously ignored" its limited knowledge about the actual cost of pervious concrete installation, Brookfield's mistake was not a material issue that required the circuit court to deny AOAO's motion to enforce the Agreement. 90 Hawaiʻi at 325, 978 P.2d at 763; compare Honda v. Bd. of Trustees of the Employees' Ret. Sys. of the State of Hawaiʻi, 108 Hawaiʻi 212, 219, 118 P.3d 1155, 1162 (2005) (holding that plaintiff who requested and relied upon defendant's retirement estimates and informational pamphlets "was not aware at the time the [employee retirement] contract was made that he had only limited knowledge with respect to the facts to which the mistake relates.") (internal quotation marks and brackets omitted). Because we conclude that Brookfield bore the risk of the mistake, we need not address whether enforcement of the Agreement would be unconscionable.

Brookfield argues that "[i]nasmuch as the circuit court's September 12, 2012 Order was in error," the award of $5,325.18 in attorneys' fees to AOAO was an abuse of discretion. The Agreement provision entitled, "Breach of Settlement Agreement" states:

> each non-breaching party may seek to enforce this Agreement and/or to obtain such other remedies as may be allowed by a Court. In the event that one or more parties is required to file suit in a court of law to enforce this Agreement and prevails in that suit, all reasonable attorneys' fees and costs incurred as a result of such enforcement shall be the responsibility of the losing party or parties.

Because we conclude the circuit court did not err, Brookfield's argument is without merit.

## IV. CONCLUSION

Therefore, the September 12, 2012 "Order Granting Plaintiff Association of Apartment Owners of Nihilani at

9

Princeville Resort's Motion to Enforce Settlement Filed May 10, 2012" entered in the Circuit Court of the Fifth Circuit is affirmed.

DATED:  Honolulu, Hawai'i, September 30, 2013.

On the briefs:

Randall K. Schmitt
Jordon J. Kimura
(McCorriston Miller Mukai MacKinnon)
for Defendants-Appellants.

R. Laree McGuire
Christian P. Porter
(Porter McGuire Kiakona & Chow)
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge